TALLMAN, Circuit Judge:
 

 This case presents the question of whether a homeowners association must demonstrate all five elements of common law fraud, including misrepresentation and reliance, to prove that its claim for delinquent homeowners dues is nondischargeable under 11 U.S.C. § 523(a)(2)(A). We hold that it must.
 

 This case also presents the question of whether a bankruptcy court abuses its discretion by vacating its own order of dismissal. We hold that it does not.
 

 I.
 

 Appellee Thomas John Slyman became delinquent in paying his homeowners dues on a residence in a development managed by Turtle Rock. He had purchased the residence in 1985. In various guises
 
 [2]
 
 and
 
 *1084
 
 through various mechanisms,
 
 [3]
 
 none of which the Court condones, Slyman retained control over the residence at all times relevant to this appeal.
 

 Turtle Rock obtained a state court default judgment for the delinquent homeowners dues first against Slyman’s sister, then against “Tom Marshall,” and finally against Slyman himself. When Turtle Rock amended the judgment to reflect Sly-man as the judgment debtor, Slyman filed Chapter 7 bankruptcy.
 

 At the initial creditors’ meeting, the Trustee requested that Slyman supplement his bankruptcy petition with “further financial information.” The Trustee proposed to continue the creditors’ meeting to October 3, 1995. Slyman’s counsel indicated that he had a scheduling conflict. The Trustee assured him that if Slyman produced the requested materials, there would not be “any additional questions” and the October 3 meeting could be “take[n] off calendar.” If the meeting was necessary it would be “eontinue[d] ... to November.”
 

 Slyman’s counsel provided financial information intended to satisfy the Trustee’s request. His cover letter reminded the Trustee of his unavailability on October 3 and reiterated his request that “if the meeting is required to be continued, please continue it to a date beyond October 3, 1995.” Slyman received no response.
 

 The Trustee nonetheless convened the continued creditors’ meeting on October 3. Neither Slyman nor his counsel attended the meeting. The Trustee mailed notice to Slyman and his counsel that they had failed to appear at the creditors’ meeting and that it had again been continued and would occur on October 31. Slyman claims that neither he nor his counsel received that notice.
 

 Neither attended the continued creditors’ meeting on October 31. Accordingly, the Trustee requested that the court dismiss Slyman’s bankruptcy. On November 8, noting that Slyman had “failed to appear at two meetings of creditors,” the court entered an order dismissing the bankruptcy-
 

 With the bankruptcy dismissed, Turtle Rock moved to collect on the default judgment. Turtle Rock obtained a writ of execution and scheduled a foreclosure sale on the residence. But Slyman prevented the sale the day before it was to occur by paying the Marshal $5,383.67.
 

 Slyman then filed a motion requesting that the bankruptcy court vacate its order of dismissal. The bankruptcy court granted Slyman’s motion and vacated the order of dismissal.
 

 The bankruptcy now resumed, Turtle Rock pressed forward with its claim, filing a complaint to determine the dis-chargeability of Slyman’s debt. Turtle Rock alleged three independent grounds for nondischargeability: that Slyman had obtained Turtle Rock’s services under false pretenses, 11 U.S.C. § 523(a)(2)(A); that Slyman willfully and maliciously withheld payment of the homeowners dues, 11 U.S.C. § 523(a)(6);
 
 [4]
 
 and, with regard to post-petition homeowners payments, that the payments were for a residence that Slyman continued to occupy, 11 U.S.C. § 523(a)(16).
 

 The bankruptcy court granted summary judgment in Slyman’s favor on Turtle Rock’s claim that the debt was nondis-chargeble under 11 U.S.C. § 523(a)(2)(a). The court reasoned that Turtle Rock failed to show that it had provided the services in justifiable reliance on Slyman’s representations or conduct, or that Turtle Rock suffered actual detriment as a result of its reliance, both of which are prerequisites to a finding of false pretenses or actual fraud.
 

 
 *1085
 
 The bankruptcy court granted summary judgment in Turtle Rock’s favor on its claim that homeowners payments that became due post-petition were nondischargeable. Invoking its broad equitable powers, the bankruptcy court awarded Turtle Rock payment of this post-petition debt out of Slyman’s payment to the Marshal. Turtle Rock appealed to the Bankruptcy Appellate Panel, arguing that it had adequately demonstrated nondischargeability under § 523(a)(2)(A) and that the bankruptcy court improperly allocated a portion of Sly-man’s payment to the Marshal to forestall foreclosure to satisfy Slyman’s post-petition debt to Turtle Rock.
 

 The Bankruptcy Appellate Panel affirmed each holding of the bankruptcy court. The BAP held that the bankruptcy court “correctly applied the standard of common law fraud” and correctly concluded that Turtle Rock failed to allege justifiable reliance and actual detriment. The BAP further held that the bankruptcy court did not err by satisfying Slyman’s post-petition debt to Turtle Rock with money Slyman paid to the Marshal because it could not “conclude that the trial court abused its discretion in vacating the dismissal of the case.”
 

 II.
 

 A.
 

 In general, this Court reviews the BAP’s decision on appeal from a bankruptcy court de novo, conducting an independent review of the bankruptcy court’s decision without deferring to the BAP.
 
 Mitchell v. Franchise Tax Bd. (In re Mitchell),
 
 209 F.3d 1111, 1115 (9th Cir.2000);
 
 Martinson v. Michael (In re Michael),
 
 163 F.3d 526, 529 (9th Cir.1998). Accordingly, this Court affirms the bankruptcy court’s findings of fact unless they are clearly erroneous and reviews its conclusions of law de novo.
 
 Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),
 
 177 F.3d 774, 782 (9th Cir.1999).
 

 B.
 

 The Court reviews the bankruptcy court’s grant of summary judgment de novo.
 
 Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),
 
 163 F.3d 570, 578 (9th Cir.1998).
 

 Under § 523(a)(2)(A) of the Bankruptcy Code, a debt for services obtained by the debtor under “false pretenses, a false representation, or actual fraud” is nondischargeable. 11 U.S.C. § 523(a)(2)(A) (2000). “The purposes of th[is] provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors.” 4 Collier on Bankruptcy ¶ 523.08[l][a] (15th ed. rev. 2000).
 

 Consistent with these purposes, the Ninth Circuit has consistently held that a creditor must demonstrate five elements to prevail on any claim arising under § 523(a)(2)(A).
 
 See, e.g., Britton v. Price (In re Britton),
 
 950 F.2d 602, 604 (9th Cir.1991). The five elements, each of which the creditor must demonstrate by a preponderance of the evidence, are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor’s statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor’s statement or conduct.
 
 American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi),
 
 104 F.3d 1122, 1125 (9th Cir.1996);
 
 Citibank (South Dakota), N.A. v. Eashai (In re Eashai),
 
 87 F.3d 1082, 1086 (9th Cir.1996).
 

 Turtle Rock predicates its false pretenses claim on Slyman’s 1990 transfer of the residence to his sister and his sister’s 1992 transfer to “Tom Marshall.” Turtle Rock alleges that as a result of
 
 *1086
 
 these transfers, it was forced to conduct multiple lawsuits against multiple titleholders when in fact Slyman was the real party in interest. Assuming
 
 arguendo
 
 that the transfers constitute deceptive conduct, Turtle Rock offers no evidence that its
 
 justifiable reliance
 
 on Slyman’s conduct
 
 caused
 
 the debt it seeks to recover.
 

 First, Turtle Rock did not provide the services for which it seeks to recover payment in reliance on representations or conduct indicating that a particular party held title to the residence. In fact, the services (continuing maintenance and upkeep of common areas and facilities) would have been provided regardless of who held title to the residence and regardless of
 
 any
 
 transfer of the residence, fraudulent or not.
 

 Second, Turtle Rock offers no evidence that the allegedly fraudulent transfers
 
 caused
 
 the debt it seeks to recover — delinquent homeowners dues. To the extent that Turtle Rock commenced lawsuits against Slyman’s sister, Elizabeth Ann Fox, and “Tom Marshall” in reliance on titleholder certificates, the detriment suffered as a result is only the marginal expense of the additional legal proceedings. Only that expense (if any) was caused by the allegedly deceptive transfers. The transfers of title did not
 
 cause
 
 the debt for delinquent homeowners dues.
 

 Turtle Rock has not demonstrated that it provided services in reliance upon Sly-man’s deceptive conduct and that, as a result of relying on that conduct, Turtle Rock incurred the debt at issue in this action. Accordingly, the debt does not satisfy § 523(a)(2)(A)’s test for nondis-chargeability.
 

 Turtle Rock urges the Court to overlook this deficiency in its claim. Turtle Rock argues that transactions between homeowners and homeowners associations are like transactions between credit card holders and credit card companies. On the basis of this similarity, Turtle Rock urges the Court to make new law extend-ing to homeowner/homeowners association transactions the modified analysis this Court applies to card holder/credit card company transactions. We decline to do so.
 

 In
 
 Eashai,
 
 this Court held:
 

 Traditional credit transactions are two-party transactions between the debtor and the creditor. In contrast, credit card transactions involve three parties: 1) the debtor/card holder; 2) the creditor/card issuer; and 3) the merchant who honors the credit card. The difficulty in credit card cases is for the creditor, who does not deal face-to-face with the debtor, to prove the elements of misrepresentation and reliance.
 

 87 F.3d at 1087. Rather than require strict evidentiary proof of misrepresentation and reliance, therefore,
 
 Eashai
 
 permits credit card companies to establish these two elements by reference to the “totality of the circumstances.”
 
 Id.
 
 at 1087-88.
 

 But homeowner/homeowners association transactions do not bear the distinguishing characteristic of card holder/credit card company transactions. Transactions between a credit card holder and a credit card company are intermediated by a third-party vendor. Transactions between a homeowner and a homeowners association, by contrast, are direct and without intermediation. Accordingly, we decline to apply the totality of the circumstances test to homeowner/homeowners association transactions. A homeowners association must prove the elements of misrepresentation and reliance directly and by a preponderance of the evidence. Because Turtle Rock failed to meet this burden of proof, the bankruptcy court properly found that Slyman’s pre-petition debt for delinquent homeowners dues was dischargeable in his bankruptcy.
 

 C.
 

 This Court reviews the bankruptcy court’s decision to vacate its order of dismissal under an abuse of discretion standard.
 
 Ford v. Union Bank (In re San Joaquin Roast Beef),
 
 7 F.3d 1413, 1414 (9th Cir.1993) (reviewing bankruptcy court
 
 *1087
 
 decision not to vacate prior order for abuse of discretion);
 
 Molloy v. Wilson,
 
 878 F.2d 313, 315 (9th Cir.1989) (reviewing denial of motion to vacate judgment for abuse of discretion).
 

 The bankruptcy court dismissed Slyman’s bankruptcy because he “failed to appear ... at
 
 two
 
 duly scheduled 341(a) meetings of creditors,” the October 3 and October 31 meetings. Order of Dismissal (emphasis added). The bankruptcy court later vacated the dismissal on the ground that Slyman did not have proper notice of both meetings. The bankruptcy court’s finding that Slyman did not have proper notice of both meetings is amply supported by the record.
 

 Slyman did not have notice of the October 3 meeting. Quite the contrary, the Trustee assured him that if he produced additional financial information (which he did) the meeting would either be canceled or rescheduled. Slyman also claimed that he did not receive notice of the October 31 meeting. Because Slyman did not receive proper notice of
 
 both
 
 meetings, which Turtle Rock does not dispute, the bankruptcy court did not abuse its discretion by vacating its order of dismissal.
 

 The bankruptcy court properly turned for guidance regarding the effect of vacating the dismissal to
 
 Great Pacific Money Markets, Inc. v. Krueger (In re Krueger),
 
 88 B.R. 238 (9th Cir.BAP 1988), a case with closely analogous facts. In
 
 Krueger,
 
 the bankruptcy court dismissed the debt- or’s bankruptcy because the debtor faked to appear at a confirmation hearing. The debtor later demonstrated that he “had not been notified” of the hearing and the bankruptcy court vacated its order of dismissal on this basis. The court found that dismissal of a case because a debtor failed to attend a meeting of which he “had not been notified” violated due process.
 
 Id.
 
 at 240-41. Accordingly, the order of dismissal in
 
 Krueger
 
 was void, “the stay was continuously in effect from the date the petition was filed,” and a foreclosure sale executed between the dismissal order and its subsequent vacation was “without effect.”
 
 Id.
 
 at 241.
 

 Slyman’s bankruptcy was dismissed on the basis of his failure to attend two creditors’ meetings. He had no notice of the first meeting. He claims that he was not informed of the second meeting. Following
 
 Krueger,
 
 requiring Slyman to make payment to forestall the foreclosure sale violated the automatic stay and was without effect.
 
 [5]
 
 The bankruptcy court did not abuse its discretion when it vacated its order of dismissal.
 

 AFFIRMED.
 

 [2]
 

 . Slyman held the property for a period of time under the pseudonym "Tom Marshall."
 

 [3]
 

 . Slyman transferred title to his sister for no consideration. His sister subsequently transferred it to "Tom Marshall” for no consideration.
 

 [4]
 

 . Turtle Rock subsequently abandoned this claim.
 

 [5]
 

 . Turtle Rock challenges the bankruptcy court's decision to apply the payment to the post-petition debt only by attacking the bankruptcy court’s order vacating the dismissal. Turtle Rock does not challenge the equitable power of the bankruptcy court to distribute money out of the estate to a creditor with a nondischargeable, post-petition debt. Accordingly, the Court does not address that issue, noting only in passing that “for many purposes, courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.”
 
 Pepper v. Litton,
 
 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (internal quotations and citations omitted).