NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. AZ-11-1504-DJuPa |
| ) | |
| BRENDA KAY NARADA and ) | Bk. No. 10-06316-RTBP |
| TY ESTUS NARADA, ) | |
| ) | Adv. Pro. No. 10-01163-RTBP |
| Debtors. ) | |
| _____ ) | |
| ) | |
| BRENDA NARADA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[1] |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Social Security ) | |
| Administration, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on February 24, 2012
at Phoenix, Arizona

Filed - March 12, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Redfield T. Baum, Sr., Bankruptcy Judge, Presiding

---

Appearances:    Ty Narada argued for Appellant Brenda Narada;
                William C. Solomon argued for Appellee United
                States of America, Social Security Administration

---

Before:  DUNN, JURY and PAPPAS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, FRAP 32.1, it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The debtors, Brenda and Ty Narada (the "Naradas"), appeal the summary judgment order in favor of the United States on behalf of the Commissioner of Social Security ("SSA") excepting a debt of Brenda Narada ("Brenda") from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6) and the bankruptcy court's subsequent denial of the Naradas' motion for relief from judgment.[2] We VACATE and REMAND to the bankruptcy court for further proceedings.

## Factual Background

The Naradas filed a chapter 7 bankruptcy petition on March 10, 2010, in the District of Arizona.

On June 25, 2010, the SSA timely filed an adversary proceeding ("Adversary Proceeding") complaint ("Complaint") against Brenda to except a debt from discharge pursuant to §§ 523(a)(2)(A) and (a)(6). Specifically, the SSA alleged in the Complaint that through misrepresentations and material omissions, Brenda had obtained a total of $24,575 in Supplemental Security Income disability benefits payments for which she was ineligible. The SSA's claims arose from Brenda's alleged receipt of an ownership interest in a motel property located in Ash Fork, Arizona ("Motel Property") on or about August 1999. The SSA's records apparently showed that Brenda had repaid $1,467.30, leaving a balance owing of $23,107.70 that the SSA sought to

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules," and the Federal Rules of Evidence are referred to as "FRE."

except from Brenda's discharge.

Ty Narada ("Ty"), who is not an attorney, filed a response ("Response") to the Complaint in behalf of Brenda by letter on July 21, 2010.[3] In the Response, Ty denied that Brenda had acquired any ownership interest in the Motel Property. He also denied that Brenda had "defrauded the system." He further alleged that "Brenda was threatened with imprisonment if she did not sign the 'Statement of Claimant or Other Person' being submitted by SSA as evidence against her." (Emphasis in original.) He further alleged that Brenda was a "special needs individual incapable of defending herself."

1. Filing of Summary Judgment Motion and Supporting Documents

On or about December 1, 2010, the SSA filed a motion for summary judgment ("Summary Judgment Motion") in the Adversary Proceeding. The Summary Judgment Motion was supported by a Statement of Facts that, in turn, relied upon 1) a memorandum and report of the Office of the Inspector General of the SSA, dated September 27, 2004 ("Investigation Report"), and 2) Statements of Claimant or Other Person signed by Brenda and her then husband, George Bannister ("George"), agreeing to repay overpayments of supplemental Social Security income benefits, each dated September 22, 2004. The Investigation Report and the referenced statements are attached as exhibits to the statement of facts but are not authenticated by affidavit or declaration.

---

[3] Since Arizona is a community property state, Ty is very interested in the disposition of this appeal because a portion of his earnings may be subject to execution to satisfy the debt to SSA if its claim is excepted from Brenda's discharge.

In the Investigation Report, the SSA's Office of the Inspector General, Office of Investigations ("OI") reported the following: In 1992, George and Brenda applied for and subsequently began receiving Social Security income benefits. The addresses used by George and Brenda were a street address and post office address, both of which were for the "Copperstate Motel." In February 1998, the Yavapai County Police Department received an anonymous tip that George and Brenda owned and operated the Copperstate Motel, which triggered the OI investigation.

Following a preliminary investigation as to the ownership of the Copperstate Motel, on March 13, 1998, the OI sent an SSI Notice of Appointment to George and Brenda advising them that they were scheduled for a "review" regarding their SSI eligibility, which would entail a telephone interview(s). On March 26, 1998, SSA Claims Representative Donna Learned called the telephone number provided by George, and when George answered, conducted the interview. George advised that he and Brenda lived in a house and paid rent to his sister, Vicky Davis. He further stated that neither he nor Brenda worked or received any income other than their SSI benefits. He confirmed that neither he nor Brenda "had their names on any deeds or mortgages, nor did they have any interest in any life estates or any un-probated estates." Based on the interview, there were no indications that George was ineligible for SSI income benefits.

Approximately fifteen minutes later, Ms. Learned called the same telephone number with a follow-up question. Brenda answered the telephone and said "Copperstate." The follow-up question was

-4-

whether their daughter, Tammy Bannister ("Tammy"), contributed to the household. Brenda responded that Tammy worked but did not contribute to the household because she was attending school. Ms. Learned then inquired of Brenda why she answered the telephone "Copperstate?" Brenda stated that "it was a motel where she and George lived, however they did not work there. Brenda also said that Vicky Davis owns the Copperstate Motel."

On March 30, 1998, George and Brenda went to the SSA's Prescott, Arizona District Office and provided the following information to Ms. Learned: Tammy had inherited the Copperstate Motel from George's mother, Doris Bannister, when she died in 1994. "Tammy was unable to acquire the property until she was twenty-one (21) years old, so the [Motel Property] stayed in the deceased's name." There was a mortgage on the Motel Property that Vicky Davis paid from the Copperstate Motel business account "(however Brenda stated that Vicky has Brenda sign the check to the mortgage company). George and Brenda do not read very well, and they have trouble completing forms and reading or writing letters. Due to this they rely on Vicky and Ron Davis to assist them." George and Brenda apparently stated that they paid rent of $450 each month to Vicky and Ron Davis, who did the books for the Copperstate Motel. However, George and Brenda stated that they received no wages or proceeds from income of the Copperstate Motel and that they only answered the telephone. George and Brenda provided Ms. Learned with a copy of Doris Bannister's will. Vicky Davis subsequently advised the OI in writing that she was not the landlord for the residence located on the Motel Property.

-5-

Thereafter, OI investigated the Copperstate Motel situation further, and among other information, located a classified advertisement on the internet listing the Copperstate Motel for sale for $200,000 and advising any interested parties to call George and Brenda for details. Yavapai County Recorder's Office records reflect that Doris Bannister died in approximately May 1994, and following probate, a deed of distribution reflected that title to the Motel Property was held equally among Brenda, George and Tammy.[4]

On September 22, 2004, the OI conducted a further in-person interview of George and Brenda at the SSA Prescott, Arizona District Office. After the OI officer disclosed the results of its investigation to date, George and Brenda provided the following information, among other things, to the OI officer:

> In approximately August 1999, George, Brenda and Tammy received equal interest in the [Motel Property]. George and Brenda failed to report this acquisition to the SSA, as they were required. From about August 1999 through September 2004, George and Brenda participated in activities at the Copperstate Motel which could have been considered work by the SSA. George and Brenda ran the [Copperstate Motel] for Tammy, who was attending college in north Phoenix, Arizona. George and Brenda also failed to report this activity to the SSA, which they were required. George and Brenda also admitted to attempting to sell the Copperstate Motel for approximately $200,000 for gainful purpose. George and Brenda understood that they should have reported the aforementioned information to the SSA, and they were

---

[4] There is an error in the Investigation Report with respect to the Motel Property title following probate: On page 5, the Investigation Report states that under the deed of distribution, the Motel Property "was equally distributed among George, Doris, and Tammy Bannister." In their Further Submissions, the Naradas included an actual copy of the distribution deed, dated October 16, 1999, transferring title as 1/3 each tenants in common to George, Brenda and Tammy.

-6-

willing to pay any money back to the SSA which they ineligibly received. George and Brenda provided a sworn and signed statement regarding the above information.

OI concluded that George and Brenda each received an approximate total of $24,575 in SSI benefits for which they were ineligible.

George and Brenda each signed an SSA Statement of Claimant or Other Person on September 22, 2004, stating the following:

I agree to repay the overpayment on Supplemental Security Income benefit from my on going SSI benefit amount till it is repaid.

2. <u>Further Filings and Proceedings on the Summary Judgment Motion</u>

The bankruptcy court issued an Order Setting Briefing Schedule ("Scheduling Order") for the Summary Judgment Motion on December 2, 2010. Counsel for the SSA prepared and served on the Naradas a Notice of Hearing ("Hearing Notice"), scheduling a hearing on the Summary Judgment Motion for February 18, 2011. The Hearing Notice included a copy of the Scheduling Order. The Scheduling Order advised the parties that they were subject to the requirements of Rule 9013-1(g)[5] of the bankruptcy court's

---

[5] Local Rule 9013-1(g) provides, in relevant part:

(g) <u>Motions for Summary Judgment</u>. In any administrative case, contested matter or adversary proceeding, any motion for summary judgment shall set forth separately from the memorandum of law, and in full, the specific facts on which movant relies in support of the motion. The specific facts shall be set forth in serial fashion, not in narrative form. As to each fact, the statement shall refer to a specific portion of the record where the fact may be found
(continued...)

local rules ("Local Rule 9013-1(g)"), meaning that each party was required to file a separate statement of facts and a memorandum of points and authorities supporting its position "as set forth in the Rule." The Naradas' responsive memorandum in opposition to the Summary Judgment Motion was due no later than 30 days after service of the Summary Judgment Motion. The Order Setting Briefing Schedule further advised that, "Failure to timely file a responsive memorandum shall constitute consent to the granting of the motion." The SSA calculated the deadline for the Naradas' response in opposition to the Summary Judgment Motion under the Scheduling Order as January 3, 2011.

The Naradas did not submit any opposition to the Summary Judgment Motion by the deadline in the Scheduling Order. However, on January 28, 2011, Ty filed copies of three letters (collectively, "Letters") with the bankruptcy court in behalf of Brenda that he served on counsel for the SSA: The first letter, and the only one of the three that reflects a signature by Ty, appears to be a discovery request to the SSA.

---

[5](...continued)
(i.e., affidavit, deposition, etc.). Any party opposing summary judgment must comply with the foregoing in setting forth the specific facts, including those facts which establish a genuine issue of material fact precluding summary judgment. . . . Unless otherwise set forth in the Rules, the Local Rules, or in an order of the court, . . . the party opposing or responding to a motion for summary judgment shall have thirty days after service within which to serve and file a responsive memorandum; the moving party shall have 15 days after service of the responsive memorandum to serve and file a reply.

The second letter, dated January 11, 2011, and addressed to the bankruptcy court, includes Ty's statements as to the results of his investigations with regard to the issues raised in the Summary Judgment Motion. With respect to ownership of the Motel Property, Ty states the following:

> Brenda's name did not appear on any of the original transactions, but was added in a corrective deed in April of 2007. I initially believed that the deed had been forged to implicate Brenda, since we had been married for two years by that time. <u>Brenda's daughter informed me that the corrective deed is legitimate</u>. (Emphasis added.)

He further states that Brenda's daughter would testify that Brenda received no proceeds from the sale of the Motel Property. In addition, he alleges that in 2004, Brenda "was threatened with imprisonment if she did not sign a promissory note that [SSA was] using as evidence against her." Ty admits that he was not present at the time, but "Brenda called me to describe what happened: An armed officer was going to take her to prison if she didn't 'sign a paper.'"

The third letter, which is signed neither by Ty nor Brenda and is addressed to "Whom it may concern," although it appears in context to be addressed to SSA's counsel, includes further factual statements relating to the legitimacy of Brenda's claim for Social Security benefits and her alleged lack of any interest in the Motel Property.

On or about February 11, 2011, within the 15-day period for filing replies to responses opposing motions for summary judgment under Local Rule 9013-1(g), SSA filed a Motion for Summary Disposition ("Disposition Motion"), requesting that the Summary Judgment Motion be granted based on Brenda's failure to respond

to the motion by the deadline required in the Scheduling Order and her resulting consent to the granting of the Summary Judgment Motion, as provided in the Scheduling Order.  In the Disposition Motion, the SSA noted the late filing of the Letters on January 28, 2011, but argued that none of the Letters sufficed as a response in opposition to the Summary Judgment Motion, as they set forth nothing more than unsupported statements of Ty, who was not married to Brenda during the period in question.  However, the SSA noted that the January 11, 2011 letter to the bankruptcy court stated that a deed listing Brenda as an owner of the Motel Property was "legitimate" according to her daughter.

Thereafter, for reasons that we cannot fathom, counsel for the SSA submitted an order, purportedly based on the Disposition Motion, providing that the Adversary Proceeding "is hereby dismissed with prejudice, with each party to bear its own costs and attorneys' fees," which the bankruptcy court promptly entered on February 16, 2011.

However, recognizing their fatal error, on February 17, 2011, counsel for the SSA filed a motion to vacate the erroneous order previously submitted and submitted a new form of order granting the Summary Judgment Motion in its entirety.  On February 17, 2011, the bankruptcy court entered orders vacating the previously entered dismissal order and granting the Summary Judgment Motion.  Accordingly, the hearing scheduled for February 18, 2011, was taken off the calendar.

3.  <u>The Naradas' Motion for Relief from the Summary Judgment Order</u>

On March 3, 2011, the Naradas filed a Motion to Review (Rule

-10-

59) and Motion for Relief (Rule 60) ("Relief Motion"), requesting the bankruptcy court to grant them relief from the order granting the Summary Judgment Motion, arguing that they did present an opposition to the Summary Judgment Motion in the Letters and that Brenda did not obtain Social Security benefits by fraud, and she never had an ownership interest in the Motel Property. The SSA filed a response to the Relief Motion, arguing that, in fact, Brenda did not file a timely response to the Summary Judgment Motion, but in any event, the Letters did not raise a genuine issue of material fact sufficient to justify vacating the summary judgment order.

On April 27, 2011, the bankruptcy court held a hearing ("Initial Hearing") on the Relief Motion at which counsel for the SSA and both of the Naradas were present. At the Initial Hearing, Brenda was not put under oath, but she stated that although she cleaned rooms and did some paperwork with respect to the Motel Property, she "never really was in charge of it." Tr. of April 27, 2011 hr'g, 3:1-3. In response to the bankruptcy court's questions regarding her signing the Statement of Claimant or Other Person, Brenda stated that, "the officer was there at the social security place, told me I had to agree everything what they said and I had to sign the papers that he filled [sic]. If I didn't, I would go to jail." She denied that the Statement of Claimant or Other Person that she signed was true and correct. In further response to the bankruptcy court's questions, Brenda stated that she did not have a lawyer and was not getting legal advice from anybody.

After hearing Brenda's statements, the bankruptcy court

-11-

strongly urged the Naradas to obtain legal advice and if possible have a lawyer representing them at a continued hearing on the Relief Motion. The bankruptcy court then continued the hearing to July 22, 2011.

On July 13, 2011, the bankruptcy court received further written submissions (the "Further Submissions") from Ty in behalf of Brenda. In his cover letter enclosing the Further Submissions, Ty reiterated the allegations stated in the Response that Brenda is a special needs person, whose "speech and learning disability renders her incapable of adequately defending herself." As noted earlier, the Further Submissions included a copy of a deed of distribution from Doris Bannister's probate, dated October 16, 1999, vesting title to the Motel Property in George, Brenda and Tammy as 1/3 tenants in common.

The continued hearing ("Final Hearing") on the Relief Motion was held on July 22, 2011, as scheduled, with the Naradas and counsel for the SSA in attendance. At the Final Hearing, Ty advised the bankruptcy court that the Naradas had been unable to obtain counsel and that they had submitted all of their evidence to the bankruptcy court for consideration. In response, counsel for the SSA argued that nothing submitted by the Naradas raised any genuine issue of material fact that would justify vacating the order granting the Summary Judgment Motion. Counsel for the SSA consequently urged that the Relief Motion be denied. The bankruptcy court then took the matter under advisement.

On August 30, 2011, the bankruptcy court entered a Minute Entry/Order ruling that based on the parties' arguments and submissions with respect to the Relief Motion, "the court is not

-12-

convinced that the judgment that has been entered was erroneously entered by the court or that other reasons were presented that warrant the vacating of that judgment." On September 12, 2011, the bankruptcy court entered an order denying the Relief Motion. The Naradas timely appealed.

## Jurisdiction

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), and we have jurisdiction under 28 U.S.C. § 158.[6]

## Issue

Did the bankruptcy court err in entering a summary judgment order excepting Brenda's debt to the SSA from her discharge in chapter 7?[7]

---

[6] We note that although the bankruptcy court docket reflects that a "Judgment" was signed on February 17, 2011 (Docket No. 20), the parties' excerpts of record include only the order granting the Summary Judgment Motion on that date and no separate judgment. Under Civil Rule 56, generally a separate document embodying a final judgment that is distinct from the order granting a motion for summary judgment should be entered. See Rule 9021. However, if in fact a separate judgment in favor of the SSA has not been entered in the Adversary Proceeding, the parties here have waived that requirement by treating the order granting the Summary Judgment Motion as a final judgment. See Casey v. Albertson's Inc., 362 F.3d 1254, 1256-59 (9th Cir. 2004), cert. denied, 543 U.S. 870 (2004).

[7] The Naradas actually list four issues for consideration in the "Statement of Issues" in Appellants' Brief, the first of which is covered by the question stated above. The second issue, we assume raised by Ty, is the unfairness of the impact of Arizona's community property laws on Ty and his children in the event that Brenda's debt to the SSA is excepted from her discharge. This issue was not raised before the bankruptcy court
(continued...)

-13-

<u>Standards of Review</u>

We review de novo the bankruptcy court's ruling granting a motion for summary judgment. <u>Ghomeshi v. Sabban (In re Sabban)</u>, 600 F.3d 1219, 1221 (9th Cir. 2010).

The bankruptcy court's interpretation and application of a local rule are reviewed for abuse of discretion. <u>Price v. Lehtinen (In re Lehtinen)</u>, 564 F.3d 1052, 1058 (9th Cir. 2009). Likewise, we review a bankruptcy court's denial of a motion to alter or amend a judgment or for reconsideration for abuse of discretion. <u>Ta Chong Bank Ltd. v. Hitachi High Tech. Am., Inc.</u>, 610 F.3d 1063, 1066 (9th Cir. 2010); <u>Triad Commercial Captive Co. v. Carmel (In re GTI Capital Holdings, LLC)</u>, BAP No. AZ-09-1053-JuMkD (Memorandum, p. 12, August 20, 2009).

We apply a two-part test in determining whether the bankruptcy court abused its discretion. <u>United States v.</u>

---

[7](...continued)
either in the Complaint or the Response <u>or</u> in the Letters filed in opposition to the Summary Judgment Motion. It makes its first appearance in the Further Submissions filed by the Naradas in support of the Relief Motion. Accordingly, it is not an issue appropriate for our determination in this appeal.

The third issue raises a complaint as to the Naradas' inability to obtain a copy of the "letter that granted SSI to Brenda" from the SSA. Ty argues that such letter would "prove" that Brenda is incapable of defrauding the SSA. In light of our disposition of this appeal, discovery questions can be addressed in further proceedings before the bankruptcy court.

Finally, the Naradas point out that the Adversary Proceeding was at one point dismissed with prejudice. As discussed in the Factual Background above, the submission by SSA's counsel of the dismissal order that was signed by the bankruptcy court was a mistake that was corrected the day after it was signed. That order was vacated and does not present a viable issue in this appeal.

-14-

Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then, we review the bankruptcy court's fact findings for clear error. Id. at 1262 & n.20. We must affirm the bankruptcy court's findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id.

Discussion

1. Summary Judgment Standards

Granting a motion for summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Civil Rule 56(a); Rule 7056; State Farm Mut. Auto Ins. Co. v. Davis, 7 F.3d 180, 182 (9th Cir. 1993). "Material facts" are such facts as may affect the outcome of a case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine" only if there is sufficient evidence to justify a finding in favor of the non-moving party. Id. However, all justifiable inferences from the evidence presented are to be considered in favor of the non-moving party. Id. at 255.

2. The Evidence before the Bankruptcy Court

Section 523(a)(2)(A) excepts from a debtor's discharge any debt for money obtained by false pretenses, a false representation, or actual fraud. In order to meet its burden to except a debt from discharge under § 523(a)(2)(A), a creditor must establish each of five elements by a preponderance of the

-15-

evidence.

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). However, recognizing the reality that few debtor defendants are likely to admit to defrauding their creditors, "fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." Devers v. Bank of Sheridan, Mont. (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985). See also First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986).

In the Complaint, the SSA alleged that Brenda had obtained $24,575 in Supplemental Security Income disability benefits payments for which she was ineligible as a result of material omissions and misrepresentations with respect to an ownership interest in the Motel Property and George and Brenda's use of the Motel Property for "substantial gainful activity" from approximately September 1999 to September 2004. The only evidence submitted by the SSA in support of the Summary Judgment Motion was the Investigation Report and the Statements of Claimant or Other Person signed by George and Brenda on September 22, 2004. However, neither the Investigation Report nor the statements were authenticated or identified by affidavit or declaration, which is a condition precedent to their admissibility as evidence under FRE 901(a).

In deciding a motion for summary judgment, a bankruptcy

-16-

court only can consider admissible evidence.

> A trial court can only consider admissible evidence in ruling on a motion for summary judgment. <u>See</u> [Civil Rule] 56(e); <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988). Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." [FRE] 901(a). <u>We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment.</u> <u>See</u> <u>Cristobal v. Siegel</u>, 26 F.3d 1488, 1494 (9th Cir. 1994); <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550-51 (9th Cir. 1989); <u>Beyene</u>, 854 F.2d at 1182; <u>Canada v. Blain's Helicopters, Inc.</u>, 831 F.2d 920, 925 (9th Cir. 1987); <u>Hamilton v. Keystone Tankship Corp.</u>, 539 F.2d 684, 686 (9th Cir. 1976).

<u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002) (emphasis added).

In addition, the Investigation Report is hearsay,[8] and there is nothing in the record to establish that it would be admissible in evidence under an exception to the general rule that hearsay evidence is not admissible.[9] <u>See</u> FRE 802.

Consequently, no admissible evidence was submitted in support of the Summary Judgment Motion, and on that basis, it was error for the bankruptcy court to grant the motion in spite of the Naradas' ineffective response, in light of the requirements

---

[8] Under FRE 801(c), "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[9] The exception for "public records and reports" under FRE 803(8) may apply with respect to the Investigation Report, but that is a matter we leave to the bankruptcy court for consideration following remand.

-17-

of the Scheduling Order and Local Rule 9013-1(g).[10]  We conclude in these circumstances that the order granting the Summary Judgment Motion should be vacated, and the Adversary Proceeding should be remanded to the bankruptcy court for further proceedings.  Accordingly, any issues with respect to the Relief Motion are moot.

Conclusion

For the foregoing reasons, we VACATE the summary judgment order and REMAND to the bankruptcy court for further appropriate proceedings.

---

[10] At oral argument, counsel for the SSA admitted that even considering the content of the Investigation Report, there was insufficient evidence to meet the burden of proof on each element to support a judgment in favor of the SSA on its § 523(a)(6) claim.