**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. SC-19-1323-BLG |
| DARREN RALPH MANN and PHYLICIA MERRIE MANN, | Bk. No. 18-02163-LT |
| Debtors. | Adv. No. 18-90078-CL |
| DARREN RALPH MANN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| INTERGULF-JMR (PARC ONE) LLC, | |
| Appellee. | |

Argued and Submitted on May 21, 2020

Filed – June 4, 2020

Appeal from the United States Bankruptcy Court
for the Southern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Christopher B. Latham, Bankruptcy Judge, Presiding

———

Appearances:     Andrew J. Miller of Engel & Miller argued for appellant
Darren Ralph Mann; Joseph Louis Oliva of Joseph Oliva &
Associates PC argued for appellee Intergulf-JMR (Parc One)
LLC.

———

Before:     BRAND, LAFFERTY, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellant Darren Mann appeals an order granting the motion for
summary judgment filed by appellee, Intergulf-JMR (Parc One) LLC
("Intergulf"). Prior to Mann's bankruptcy filing, Intergulf obtained a default
judgment against him in the California state court for common law fraud.
Intergulf sought to except the debt from Mann's discharge on several theories
under § 523(a),[1] and later moved for partial summary judgment on its
§ 523(a)(2)(A) claim based on issue preclusion. Finding that the elements of
issue preclusion were met, the bankruptcy court granted the motion.
Thereafter, the court entered a final judgment determining that the debt was
excepted from Mann's discharge and dismissing Intergulf's remaining claims.
We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of
Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil
Procedure.

2

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A. Prepetition events

### 1. Background of the parties

Mann owned and operated West America Corporation ("West"), a general contractor. In late 2013, Intergulf entered into a contract with West to construct a 172-unit apartment complex. West hired various subcontractors for the project. Intergulf agreed to pay to West, and West agreed to forward to the subcontractors, progress payments based on applications received from West. The intent of these earmarked progress payments was to compensate the subcontractors for work completed in the payment period. During construction, West sent Intergulf applications for progress payments, which Intergulf timely paid to West.

In October 2014, Intergulf discovered that some subcontractors had not been paid by West for work performed on the project, despite Intergulf having made the progress payments to West. West refused to provide Intergulf with an accounting or explanation as to how the progress payments were applied. To the contrary, West and Mann told Intergulf that the subcontractors had in fact been paid. The evidence showed that Intergulf's checks had been cashed by West and Mann, but nothing reflected that any payments had been forwarded to the subcontractors. Mann later told Intergulf's project manager, Brian Buchanan, that he was using Intergulf's funds to pay overhead unrelated to the project.

Soon thereafter, Intergulf terminated the contract with West. Intergulf discovered that West and Mann had misappropriated $1,068,793.24. Intergulf also learned that West and Mann had conspired with certain subcontractors to overcharge Intergulf. For example, to repay some of his outstanding loans to one subcontractor, Mann fabricated work orders to include fictitious charges that were not related to any additional work or materials for the Intergulf project.

## 2. The state court litigation

Intergulf filed suit against West, Mann and others in the California state court asserting multiple causes of action including breach of contract, negligence, and common law fraud ("State Court Action"). Intergulf later filed a second amended complaint, the operative complaint in the case, to include alter ego claims against Mann. In addition to damages caused by West's and Mann's alleged misappropriation, Intergulf also sought damages for their alleged negligence and breach of contract. Intergulf alleged that, during the course of construction and in breach of the contract, West had left installed drywall exposed to the elements for a prolonged period of time, which caused damage to the drywall and to the building's interior. Neither West nor Mann filed an answer to the operative complaint.

Prior to filing the second amended complaint, Intergulf had served West and Mann, through their counsel, with requests for admission ("RFAs"). When they failed to respond, Intergulf moved for and obtained an order

deeming the RFAs admitted on the following:

- West was the alter ego of Mann;

- West used funds paid by Intergulf for work performed on the project for purposes unrelated to the project, without Intergulf's knowledge or consent;

- Mann told Intergulf that West diverted Intergulf's funds for purposes unrelated to the project;

- West did not pay subcontractors for work performed on the project after receiving payment from Intergulf for the work, and told Intergulf that the subcontractors were paid all of the money they were owed under West's approved payment applications;

- West conspired with certain subcontractors to create secret profit shelters by using increased bid amounts; the purpose of the profit shelters was to overcharge Intergulf for costs of construction; and West promised to split any profits obtained by the profit shelters with the participating subcontractors;

- West left portions of the project open and exposed to weather, including installed drywall.

One year into the State Court Action, Mann informed Intergulf's counsel that he had been unable to reach his attorney for at least six months, and that he was in the process of retaining new counsel. Intergulf agreed to postpone Mann's deposition so that he could find new counsel. Mann never secured new counsel, refused to sit for deposition, and failed to participate in his own defense.

5

Approximately 18 months into the State Court Action, Intergulf requested and received an entry of default against West and Mann. Neither West nor Mann sought to have the defaults set aside.

Intergulf then sought a default judgment against West and Mann, supported by 970 pages of documents including a sworn declaration from Buchanan, Intergulf's project manager. With respect to Intergulf's alleged negligence and breach of contract damages, Buchanan stated that, in addition to the damages caused by West's failure to properly install the drywall and protect it from weather, Intergulf was damaged by West's failure to clean up the construction site. Also, due to West's failure to properly schedule and coordinate certain work performed by subcontractors, Intergulf incurred additional expenses having to dig up installed underground electrical lines and re-waterproof decks due to damage caused by scaffolding. In total, Buchanan stated that the damages related to West's negligence and breach of contract were $732,567.03. Adding this amount to the claimed fraud damages of $1,068,793.24, Intergulf's total damages were $1,801,360.27.

The state court held a "prove-up" hearing and heard live testimony from Buchanan, the only witness. He testified that West and Mann defrauded Intergulf by misappropriating the earmarked progress payments. He also testified about the damages related to the drywall, clean up, re-digging of the electrical line trenches and re-waterproofing of the decks. Despite previously stating that these damages were caused by West's and Mann's negligence and

breach of contract, Buchanan now testified that these damages were caused by West's and Mann's fraud. Buchanan testified that, in his opinion, West and Mann were completing certain work too soon in the construction process simply to get money from Intergulf.

The state court entered its Rulings Following Default Prove-Up Hearing, finding that West and Mann were liable to Intergulf for fraud:

> The court finds, based on the Buchanan testimony, that Mann and Kimball[2] and their company engaged in a knowing, intentional fraud as to Intergulf. The essential elements of a fraud cause of action are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638.) Intergulf carried its burden on each of these elements.
> . . .
> The court finds that the kickbacks identified by Mr. Buchanan, among other things, demonstrated fraud, oppression and malice by clear and convincing evidence. The court is of the view that the fraud judgment should be non-dischargeable in bankruptcy. The court finds that Intergulf established that Mann and Kimball are the alter egos of West America. Mann, Kimball and West America are jointly and severally liable.

The state court entered a $2,274,756.03 Default Judgment against West and Mann broken down as follows:

$1,801,360.27 - Damages
$    25,422.91 - Costs

---

[2] Mr. Kimball was Mann's business partner and the co-owner of West.

$ 267,972.85 - Prejudgment Interest

$ 180,000.00 - Reimbursement for funds Intergulf paid to settle matter with drywallers not paid by West

None of the defendants appealed the Default Judgment.

## B.    Postpetition events

### 1.    Mann's bankruptcy filing and Intergulf's adversary complaint

Mann filed a chapter 7 bankruptcy case on April 11, 2018. Intergulf filed a complaint against Mann, seeking to except the Default Judgment from discharge under § 523(a)(2)(A), (a)(4), and (a)(6).[3] The only claim relevant here is § 523(a)(2)(A). Mann filed an answer denying generally the allegations. He raised the affirmative defense of abandonment by counsel as the basis for why he did not perform his legal obligations in the State Court Action.

### 2.    Intergulf's motion for partial summary judgment

Thereafter, Intergulf moved for partial summary judgment on its § 523(a)(2)(A) claim based on issue preclusion ("PSJ"). In support of its argument to give preclusive effect to the Default Judgment, Intergulf argued that the issue sought to be precluded in the adversary case — Mann's fraud — was identical to the issue that was decided in the State Court Action. Second, Mann's fraud was actually litigated and necessarily decided in the

---

[3] Intergulf did not seek or receive recovery based on Mann's "kickback" scheme. Intergulf stated that it noted this additional fraudulent conduct in its adversary complaint simply to demonstrate Mann's specific intent to defraud Intergulf.

State Court Action. The state court made an express finding of fraud, and the finding was necessary to the Default Judgment. Third, argued Intergulf, the Default Judgment, even though by default, was final and on the merits. Mann did not file an appeal, and the time to do so had long since passed. Lastly, the parties in the two actions were the same.

Intergulf argued that Mann had a full and fair opportunity to litigate the issues determined in the State Court Action, despite his unsupported claim of abandonment by counsel. He knew for six months before contacting counsel for Intergulf that his attorney had allegedly disappeared and, during that time and for months thereafter, he made no attempt to hire new counsel, even though he had done so in other, contemporaneous proceedings. Intergulf maintained that it gave Mann ample time to retain new counsel or defend himself pro se at trial, and he refused.

Mann opposed the PSJ. He did not dispute that the elements of issue preclusion were met. However, Mann argued that abandonment by counsel supported a public policy reason for denying summary judgment on the basis of issue preclusion. Mann also attacked the merits of the Default Judgment. He explained how West became undercapitalized and what led to its downfall. He argued that price adjustments were the result of Intergulf's failure to provide finished plans for the job when subcontractor bids were made; it was not part of a kickback scheme intended to deceive Intergulf. He also argued that his decision to spend the earmarked progress payments to

9

"keep the doors open" as opposed to paying the subcontractors was not fraudulent. In short, Mann disputed the state court's finding that he defrauded Intergulf.

### 3. The bankruptcy court's ruling on the PSJ

After a hearing, the bankruptcy court entered an order granting the PSJ on the basis of issue preclusion, finding that each of the five elements were met and that application of the doctrine would further public policy. The court then entered an order dismissing Intergulf's remaining claims and a judgment determining that the Default Judgment was nondischargeable under § 523(a)(2)(A). Mann timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in granting summary judgment under § 523(a)(2)(A) based on issue preclusion?

## IV. STANDARDS OF REVIEW

We review de novo a bankruptcy court's decision to grant summary judgment and except a debt from discharge under § 523. *Zuckerman v. Crigler (In re Zuckerman)*, 613 B.R. 707, 713 (9th Cir. BAP 2020).

We also review de novo a bankruptcy court's determination that issue preclusion was available. *Id.* If issue preclusion is available, we then review

the application for an abuse of discretion. *Id.* Under that standard, we reverse where the bankruptcy court applied the wrong legal standard, or misapplied the correct legal standard, or its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.* (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)).

## V. DISCUSSION

### A. Governing law

#### 1. Summary judgment standards

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civil Rule 56(a) (incorporated by Rule 7056); *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute is "genuine" if there is sufficient evidence for a reasonable fact-finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). Once the moving party has met its initial burden, the non-moving party must show specific facts establishing

the existence of genuine issues of fact for trial. *Anderson*, 477 U.S. at 256.

### 2. Issue preclusion standards

Issue preclusion applies in dischargeability proceedings to preclude relitigation of state court findings relevant to exceptions to discharge. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). And a bankruptcy court may apply the doctrine to an existing state court judgment as the basis for granting summary judgment. *See Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In this case, we apply California law.

In California, the party asserting issue preclusion has the burden of establishing the following "threshold" requirements:  (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990). Even if all five threshold requirements are satisfied, California law requires that application of the doctrine be consistent with the

12

public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation[.]" *Id.* at 342-43.

To meet its burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Reasonable doubts about what was decided in the prior action will weigh against applying issue preclusion. *Id.*

California law accords preclusive effect to default judgments, "at least where the judgment contains an express finding on the allegations." *Gottlieb v. Kest*, 141 Cal. App. 4th 110, 149 (2006); *see also Green v. Kennedy (In re Green)*, 198 B.R. 564, 566 (9th Cir. BAP 1996). The rationale behind finding that default judgments can be preclusive is that defendants who are served with a summons and complaint but fail to respond are presumed to admit all well-pleaded facts in the complaint. *In re Harmon*, 250 F.3d at 1247. Therefore, a default judgment:

> conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment[.]

*Gottlieb*, 141 Cal. App. 4th at 149.

In California, a default judgment satisfies the "actually litigated" requirement for the application of issue preclusion. *Younie v. Gonya (In re*

*Younie)*, 211 B.R. 367, 375 (9th Cir. BAP 1997), *aff'd*, 163 F.3d 609 (9th Cir. 1998). For a default judgment to be "actually litigated," the material factual issues must have been both raised in the pleadings and necessary to uphold the default judgment. *Gottlieb*, 141 Cal. App. 4th at 149. Therefore, the record in the prior proceeding must show an express finding upon the allegation for which preclusion is sought. However, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." *In re Harmon*, 250 F.3d at 1248.

### 3.    Exceptions to discharge under § 523(a)(2)(A)

Section 523(a)(2)(A) provides that a debt may be excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud." To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate, by a preponderance of the evidence: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000). The elements of fraud under California law and the elements of fraud under § 523(a)(2)(A) are identical. *In re Younie*, 211 B.R. at 373-74.

**B.    The bankruptcy court did not err in granting summary judgment under § 523(a)(2)(A) based on issue preclusion.**

Mann does not appear to challenge the bankruptcy court's ruling that the second (actually litigated), fourth (decision is final and on the merits) and fifth (same parties) issue preclusion criteria were met. Therefore, we address only criteria one (identity of issues), three (necessarily decided), and California's public policy requirement.

**1.    The issue in the two proceedings was identical.**

Mann contends that, in the State Court Action, Intergulf failed to provide evidence supporting a finding of fraud, including intent and damages, and that the state court made no findings that Mann made any intentional misrepresentations or that Intergulf was damaged as a result of those misrepresentations. The record belies his contentions.

Intergulf's second amended complaint alleged all of the required elements for actual fraud, at least with respect to the misappropriated progress payments. Mann failed to file an answer and a default was entered, resulting in an admission of the well-pleaded facts. The necessary facts supporting fraud were also deemed admitted when Mann failed to respond to the RFAs. Intergulf's evidence in support of the Default Judgment, namely Buchanan's testimony, which the state court relied upon for its ruling, also supported a finding that Mann defrauded Intergulf, thereby causing it damages. Finally, and most importantly, the state court expressly found that

15

Intergulf "carried its burden on each of [the fraud] elements," and that Mann and West "engaged in knowing, intentional fraud as to Intergulf."

Because a fraud claim under § 523(a)(2)(A) and California law mirror one another, an actual fraud finding satisfies the "identical issue" criterion for issue preclusion in a § 523(a)(2)(A) action. *In re Zuckerman*, 613 B.R. at 714. Undoubtedly, there is an "identity of the issues." The Default Judgment explicitly provides that Mann is liable to Intergulf for fraud.

**2.      The issue of Mann's fraud was necessarily decided**.

To conclude that the issue was "necessarily decided," the issue must not have been "entirely unnecessary" to the judgment in the prior proceeding. *Bartenwerfer v. Buckley (In re Bartenwerfer)*, BAP Nos. NC-16-1277-BJuF & NC-16-1299-BJuF, 2017 WL 6553392, at *8 (9th Cir. BAP Dec. 22, 2017) (citing *Lucido*, 51 Cal. 3d. at 342). The question here is, could Intergulf have been awarded damages in the Default Judgment for something other than fraud?

Mann argues that the bankruptcy court should not have found that the entire Default Judgment was excepted from discharge under § 523(a)(2)(A), when at least some of Intergulf's claimed damages — the costs related to the drywall repair, clean-up, re-digging of the electrical line trenches and re-waterproofing of the decks — were based on West's and Mann's alleged negligence and breach of contract. Mann did not raise this issue before the bankruptcy court. Nonetheless, because the application of § 523(a)(2)(A) to determine dischargeability of an underlying judgment is a matter of law, and

16

Intergulf has briefed the issue, the Panel in its discretion will consider it. *See In re Younie*, 211 B.R. at 377.

We agree that Intergulf pled these alleged damages on theories of negligence and breach of contract. Further, the only relevant admission in the RFAs was that "West had left portions of the project open and exposed to weather, including installed drywall," which does not establish fraud. Likewise, Buchanan's declaratory testimony in support of the Default Judgment stated that these damages, totaling $732,567.03 of the requested $1,801,360.27, were a result of West's and Mann's negligence and breach of contract. However, at the prove-up hearing, Buchanan testified that, in his belief, West and Mann purposefully and prematurely installed the drywall and electrical lines and waterproofed the decks solely to get money from Intergulf. The inference was that West's and Mann's conduct was fraudulent.

At the end of the prove-up hearing, the state court found that Intergulf was "entitled to tort recovery and also recovery in contract." Yet, in its Rulings Following Default Prove-Up Hearing, the state court made no mention of negligence or breach of contract, and found that West and Mann were liable to Intergulf based solely on fraud. The state court awarded compensatory "Damages" in the full amount requested of $1,801.30.27. Thus, Intergulf recovered damages solely on a theory of fraud. In reviewing the state court's findings, the bankruptcy court took the correct position that fraud was central to the Default Judgment and that *all* damages awarded

17

were *fraud* damages.

We, as well as the bankruptcy court, are unable to question the state court's decision as it would amount to an impermissible collateral attack on the Default Judgment. *See Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 106 (9th Cir. BAP 2007) ("Under state law, a litigant may not collaterally attack a final judgment for nonjurisdictional errors."). Mann could have challenged any possible errors in the Default Judgment by filing an appeal with the California Court of Appeal, but he chose not to do so. The preclusive consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

3. **Application of issue preclusion to the Default Judgment did not contravene public policy.**

Mann argues that public policy precluded the application of issue preclusion to the Default Judgment, because there are doubts as to what was determined at the prove-up hearing. Mann has apparently abandoned his "abandonment by counsel" argument. Contrary to Mann's new argument, there is no doubt as to what the state court determined. In any case, his argument does not address the public policy considerations of judicial economy, preservation of the integrity of the judicial system, and prevention of vexatious litigation.

The bankruptcy court found that applying issue preclusion in this case

18

advanced all three of the public policies underlying the doctrine. Specifically, the court found that permitting Mann to now litigate the issues that he previously chose not to would not serve judicial economy or the integrity of the judicial system. In addition, judicial economy favored application, because it avoided a second suit, which appeared all the less necessary in light of the full evidentiary hearing before the state court.

**4.      Summary judgment in favor of Intergulf was proper**

The bankruptcy court did not err in concluding that the issue of whether Mann committed fraud within the meaning of § 523(a)(2)(A) was precluded by the Default Judgment and could not be relitigated in the bankruptcy court. We perceive no abuse of discretion in the bankruptcy court's decision to apply issue preclusion in this case.

Because of the preclusive effect of the Default Judgment, Intergulf satisfied its burden of demonstrating that there were no genuine issues of material fact as to the elements of fraud. As a result, the bankruptcy court did not err in granting Intergulf summary judgment on its § 523(a)(2)(A) claim.

## VI. CONCLUSION

For the reasons state above, we AFFIRM.

19