In re Dwight C. LUNDELL and Dinah F. Lundell, Debtors.

Dwight C. Lundell and Dinah F. Lundell, Appellants,

v.

Dale D. Ulrich, Chapter 7 Trustee, Appellee.

BAP No. AZ–98–1474–MePeR.
Bankruptcy No. 90–03132–PHX–RTB.
Adversary No. 94–00704.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 20, 1999.

Decided July 21, 1999.

Kenneth B. Vaughn, Phoenix, AZ, for Dwight and Dinah Lundell, appellants.

Terry A. Dake, Phoenix, AZ, for Dale D. Ulrich, Trustee, appellee.

Before MEYERS, PERRIS and RUSSELL, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

The trustee sued the debtors, as well as several other defendants, for damages arising from the failure to turn over stock in a timely fashion. On summary judgment, the court granted a judgment in favor of the trustee on the issue of liability. After an evidentiary hearing, the court determined the amount of the damages. Upon the trustee's motion, the court certified its order as final. The debtors appeal the certification, as well as the calculation of damages. They also appeal entry of the judgment against the debtors' marital estate.

We **AFFIRM.**

### II

### FACTS

On March 5, 1990, Dr. Dwight C. Lundell ("Dr. Lundell"), and his wife, Dinah F. Lundell ("Mrs. Lundell") (collectively the "Debtors"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code. At that time, there were several lawsuits pending in state court against Dr. Lundell on the theory that he was a partner in a construction business known as West Coast Construction ("West Coast").

Creditors of West Coast filed proofs of claim for almost $4,000,000. The bankruptcy case was converted to Chapter 7 on September 18, 1991, and Dale D. Ulrich was appointed trustee ("Trustee"). In November 1995, the bankruptcy court ruled that Dr. Lundell was liable as a partner in West Coast ("West Coast Litigation"). The Debtors appealed that decision and the district court remanded. The creditors then appealed to the Ninth Circuit Court of Appeals, an appeal that is still pending.

At the time of the Debtors' bankruptcy filing, Dr. Lundell was a director of Audre Recognition Systems, Inc. ("Audre") and he owned 2,712,326 shares of Audre stock. The day the Debtors filed for bankruptcy, Dr. Lundell allegedly pledged the stock to his brother Mark Lundell ("Mark") to secure an outstanding debt. Later, when Mark moved to foreclose on the stock, the Trustee filed an adversary proceeding to avoid the pledge as fraudulent, ultimately obtaining a judgment against Mark and his wife for the stock. When the stock was not turned over, a money judgment was entered against them.

On June 24, 1993, the Trustee filed a motion to compel Audre to cancel the existing stock certificates in the name of the Debtors and to reissue them in the name of the Trustee. Audre took the position that there were only 37,000 shares in the name of the Debtors. The Trustee then discovered that on March 4, 1993, the Debtors had purported to transfer 2.7 million of the shares into a newly formed limited partnership, Six L Properties Limited ("Six L"), comprised of Dr. Lundell and Mrs. Lundell. The Trustee then took action to have all the stock turned over to the estate.

Pursuant to court order, the stock was finally delivered to the Trustee on February 24, 1994. Starting on May 2, 1994, the Trustee sold the stock through public transactions on the American Stock Exchange. He received $1,668,847.23 for all but 425,000 shares. The Debtors paid him $425,000 and in exchange the Trustee agreed that he would not sell those remaining shares.

On September 2, 1994, the Trustee filed the adversary proceeding at the center of this appeal, naming as defendants the Debtors, Six L, Dr. Lundell's pension plan, and two other limited partnerships Dr. Lundell apparently had an interest in. The Trustee alleged that the estate had been harmed by the defendants' refusal to cooperate and turn over the stock. He

asserted that the value of the stock dropped while he tried to obtain possession of the stock for sale, and sought damages based on this drop in value.

On November 11, 1996, the Trustee filed a motion for summary judgment ("Motion") against the Debtors, seeking a judgment in the amount of $6,110,753.04, plus interest, costs and attorney's fees. On January 22, 1997, the court granted the Motion as to liability, but ordered an evidentiary hearing on the issue of damages.

The evidentiary hearing took place on August 4, 1997, and October 28, 1997, with closing arguments on January 8, 1998. The bankruptcy court entered a minute entry/order on March 6, 1998, assessing damages of $1,477,834.45.

The Trustee then brought a motion pursuant to Fed.R.Civ.P. 54, as incorporated by Fed.R.Bankr.P. 7054, to have the court enter a final order against the Debtors, despite the fact that claims against the other defendants had not been resolved. The Debtors objected, arguing that the court's order was interlocutory and the damages were contingent on the resolution of the West Coast Litigation. They contended that if that litigation were resolved in their favor, there would not be any harm to the estate from the delay in turning over the stock and there were no damages for which they would be liable. The court ruled that certification of the order as final was appropriate.

## III

### STANDARD OF REVIEW

■ The decision to enter the order as a final judgment is reviewed under an abuse of discretion standard. *In re Bowen,* 198 B.R. 551, 555 (9th Cir. BAP 1996). The court's factual finding regarding the amount of damages is reviewed under a clearly erroneous standard. *In re Bradford,* 112 B.R. 347, 351 (9th Cir. BAP 1990).

## IV

## DISCUSSION

### A. *Certification of Order as Final*

■ Fed.R.Civ.P. 54 allows the court to enter a final judgment as to fewer than all claims or parties upon a finding that there is no just reason for delay. The Debtors contend that the court abused its discretion when it certified the order as final because the damage award, in their view, is dependent on the resolution of the West Coast Litigation. By its very language, Rule 54 only applies to resolution of claims or parties. The Rule would not allow the court to certify as final an order or judgment in which the damages were contingent on a future event. So, the first question for the Panel is whether the damages are contingent.

The Debtors argue that the damage award set a maximum for which they might be liable, but there might be no liability at all, a fact which cannot be determined until the claims against the estate have been resolved through the West Coast Litigation. We find this reasoning flawed.

The court determined that the Debtors' actions resulted in a loss to the estate because if there had been no interference, the Trustee would have sold the stock earlier and received a greater return. The damage to the estate is not contingent on what happens to the other claims. It has been determined. The resolution of the West Coast Litigation affects what the Debtors may receive as the surplus in the estate. *See* 11 U.S.C. § 726(a)(6).

The trustee is responsible for liquidating the estate and administering all assets. If the estate turns out to be solvent, then the remainder is returned to the debtor. A defendant, even if they are the debtors, should not be able to forestall paying a judgment based on the failure to turn over property simply because the solvency of the estate has not been resolved. Here, according to the court's findings, the estate

has been diminished by $1,477,834.45 in assets it would have but for the Debtors' misconduct.

The order is not contingent on any future event and the court did not indicate that it would revisit the issue of damages at some later date. The order may be interlocutory because it was not against all defendants, or on all claims, but it should not be viewed as interlocutory because the claims against the estate have not been resolved.

 This still leaves the question of whether the court should have certified the order as final when it did not resolve all claims against all parties. Due deference should be granted to the trial court's decision to certify the judgment as final. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir.1991). Certification is proper if it would aid in expeditiously deciding the case. *Id.* The claims on appeal do not have to be separate and independent from the remaining claims. However, the court must balance these factors against the desire to avoid piecemeal appeals. *Id.* at 797–98.

We are satisfied that the bankruptcy court did not abuse its discretion in certifying the judgment against the Lundells as a final judgment. Resolving this appeal will aid in expeditiously resolving the adversary proceeding since the Trustee may not have to proceed further against the remaining defendants, each of which is controlled by the Lundells, with the affirmance of the judgment.

### B. *Calculation of Damages*

 The Debtors argue that, even if the judgment is final, the court erred in its calculation of the damages. The Debtors' expert contended that there should have been a major discount from the list price of the stock because the Trustee sold such a large block of stock and the actual sales took place over a long period of time, 13 months.

The Trustee argued that the bulk was not such a significant factor, and instead, the drop in price was attributable more to factors that arose because of the delay, such as news of Audre's financial problems. He argued that when he made the demand Audre was in good financial shape. However, when he finally obtained the stock, news began to be revealed that Audre was in financial trouble. This factor was unique to the timing. Accordingly, it was his position the listed price should not be discounted nearly as much as alleged by the Debtors.

The court explored the issue at some length. It analyzed the testimony of the Debtors' expert and explained how his calculations failed to take into consideration certain factors and needed to be adjusted upward. It then examined the impact of the bulk sale and the prices obtained by the Trustee over time. The court concluded "that the actual sales of the stock by the trustee did not have a materially direct, negative impact on the stock price. Rather, in general, the stock price was declining for other reasons than the stock sales by the trustee." Furthermore, it stated that it found the conclusions of the Trustee's expert to be better reasoned than the Debtors' expert.

The court's conclusion that factors other than the bulk sale were more significant in the drop in price of the stock is supported by the record and is not clearly erroneous. First, as pointed out by the court, the actual drop in price of the stock during the time the Trustee was selling the stock was not as dramatic as one would expect if the Debtor's expert was correct in his assumptions and it is more consistent with the position of the Trustee's expert.

Second, the Debtors' argument that the bulk sale would affect the price is too speculative. The Debtors approach the sale as if an insider were selling the stock. They claim that once the Trustee gave notice of the sale pursuant to the securities laws that the price would have dropped. The sale of a large block of stock by an

insider might raise red flags and hurt the stock price. However, here the sale was by the Trustee. For all purchasers knew, Dr. Lundell was experiencing personal financial difficulty, but the company was still financially sound and the stock still valuable. A large sale under these circumstances would not necessarily have led to the kind of drop in price anticipated by the Debtors. The court was on solid ground when it attributed more significance to the deteriorating financial condition of Audre, than the impact of any bulk sale.

The Debtors still raise an objection to the 30% adjustment made by the court. The court concluded that:

> Thus, in general, the court finds the conclusions of the trustee's expert better reasoned than the defendant's [sic] expert. However, the court also concludes, as trier of fact, that the final damage opinion of the trustee's expert ($2,109,763.49) should be reduced. The method for that reduction is not subject to any precise mathematical formula, which is also true of this entire issue. Considering all the risk factors set forth by both experts, the court will reduce this amount by 30% (631,929.04).

Under the clearly erroneous standard reversal is only warranted if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted). The Panel is required to uphold any determination of the bankruptcy court that falls within a broad range of permissible conclusions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 400, 110 S.Ct. 2447,

110 L.Ed.2d 359 (1990). "Where there are two permissible views of the evidence the factfinder's choice between them cannot be clearly erroneous." *Bradford, supra,* 112 B.R. at 352.

█ Furthermore, as pointed out by the Trustee, the difficulty in calculating the damages is due in large part to the malfeasance of the Debtors. Where a "defendant by his own wrong has prevented a more precise computation ... [the factfinder] may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly." *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946). "Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain." *Id.* at 264–65, 66 S.Ct. 574. *See also Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1118 (2nd Cir.1986) ("When a difficulty faced in calculating damages is attributable to the defendant's misconduct, some uncertainty may be tolerated [in setting damages].").

█ The court was required to make findings of fact, pursuant to Fed. R.Civ.P. 52, as incorporated by Fed. R.Bankr.P. 7052. However, it did not have to make the kind of detailed calculation the Debtors seek. The court "sitting as a trier of fact is not required to itemize the components that enter into an award of damages." *Frito–Lay, Inc. v. Local Union No. 137, Int'l Brotherhood of Teamsters,* 623 F.2d 1354, 1364 (9th Cir.1980)[1]

---

1. The Court in *Frito–Lay* still found it necessary to remand for further findings and the reason for this is worth mentioning so that courts in the future will be properly guided by our decision today. In *Frito–Lay,* the Court determined that certain components of the damages claimed should not have been included in the damages award. Since the trial court had not itemized the components that went into its calculation, the Court of Appeals could not determine on the record before it by

how much the damages needed to be adjusted.

When a trial court is faced with a claim for damages based on multiple components, but it finds that one or more components cannot legally support damages, the trier of fact should make such a ruling clear. Additionally, if a particular component of damages is especially contested, the trial court that gives a more detailed explanation of the amount it

(citing *Neal v. Saga Shipping Co.*, 407 F.2d 481, 489 (5th Cir.1969), *George v. United States*, 295 F.2d 310 (7th Cir.1961); *Allen v. W.H.O. Alfalfa Mill. Co.*, 272 F.2d 98 (10th Cir.1959)). *See also Robey v. Sun Record Co.*, 242 F.2d 684, 690 (5th Cir. 1957) ("We are asked to require the district judge to specify the method by which the calculation of damages was made. The district judge was not required to undertake such a task.") (citation omitted).

> There is no requirement that a jury, in the absence of special interrogatories, or a trial court, sitting as trier of fact, itemize the components that enter into an award of damages ... Neither judge nor jury is expected to be infallible in such matters. The standards by which damages are determined leave room for the play of judgment and discretion of the type properly exercised by the trial court. Here it cannot be said that the result he reached was clearly erroneous.

*Neal v. Saga Shipping Co.*, 407 F.2d 481, 489 (5th Cir.1969) (upholding as fair the trial court's decision to reduce damages by 30%). "Insistence on mathematical precision would be illusory and the judge or juror must be allowed a fair latitude to make reasonable approximations guided by judgment and practical experience." *Whitaker v. Blidberg Rothchild Company*, 296 F.2d 554, 555 (4th Cir.1961).

The court's decision to favor the testimony of the Trustee's expert over that of the Debtors is supported by the record. The court recognized that some adjustment to the Trustee's calculations was appropriate. However, due to the various factors involved, including the delay caused by the Debtors' wrongful actions, a precise method for adjusting the calculations was made extremely difficult. The court was not required to give a more detailed explanation of its damages calculation.

attributes to that component reduces the possibility that the appellate court will need to remand if it finds that the component should not have been included in the calculation. Of

### C. Judgment Against Mrs. Lundell and the Marital Community

■ The Debtors also contend that the court erred in entering a judgment against Mrs. Lundell personally, as well as against the marital estate. The motion for summary judgment was brought against the "defendants." Mrs. Lundell was a named defendant. The motion made reference to allegations of actions taken by Mrs. Lundell as part of the Debtors' efforts to keep the stock from the Trustee. The Debtors did not raise the issue of her liability, or the liability of the marital estate, until the court was dealing with the issue of damages.

In any case, not only was the motion clearly brought against her, the record shows that she was involved in the efforts to avoid turning the stock over. For example, the record shows that she signed the pledge of stock to Mark on March 5, 1990, the same day the petition was filed. The record also contains the documents showing Mrs. Lundell's involvement with Six L postpetition, the entity to which the Debtors transferred the stock postpetition and without court authority.

The Trustee came forward with enough evidence to shift the burden to the Debtors to show that there was a genuine dispute as to a material fact such that summary judgment should not be granted against Mrs. Lundell and the marital estate. The Debtors failed to come forward with any such evidence. The court correctly entered judgment against Mrs. Lundell and the marital estate.

## V
### CONCLUSION

The damage award was based on the Debtors' improper delay in turning over the Audre stock. The damages are not contingent on any future event. The resolution of the West Coast Litigation goes

course, this is not applicable here because we find no error with the method used by the court in calculating damages.

only to the issue of whether there will be surplus assets that will be returned to the Debtors. Furthermore, there is an adequate basis for certifying the order against the Debtors as final for purposes of appeal.

The court's decision to give more weight to the testimony of the Trustee's expert is supported by the record. Additionally, where, as here, the court makes a factual finding on value that falls within an acceptable range, it need not explain in detail the basis for any adjustment. The court explained why it found the Trustee's expert more persuasive, it explained in general terms why a reduction of that expert's valuation was appropriate, and it chose a value within the acceptable range. Under these circumstances, we will not reverse for clear error.

Finally, the court correctly entered the judgment against Mrs. Lundell and the marital estate. The Debtors failed to contest the entry of an order against Mrs. Lundell and the marital estate at the time of the motion for summary judgment, and the Trustee provided adequate evidence for such an order and carried his burden on the issue.

**AFFIRMED.**