NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ALAN GENE LAU and AMBER<br>WADDELL LAU,<br>　　　　　　Debtors. | BAP No. CC-22-1087-LCF<br><br>Bk. No. 1:20-bk-10346-VK<br><br>Adv. No. 1:20-ap-01053-VK |
| ALAN GENE LAU,<br>　　　　　　Appellant,<br>v.<br>RUSSELL PRIOR; CHERYL PRIOR,<br>　　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

Before: LAFFERTY, CORBIT, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Alan Gene Lau ("Debtor") appeals the bankruptcy court's judgment

after trial finding nondischargeable under § 523(a)(2)(A)[1] a $135,000 debt to

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

appellees arising from his fraud in failing to disclose defects in real property he sold to them.

We AFFIRM.

## FACTS

### A. Pre-Petition Events

Debtor has been a California licensed real estate agent since 2005. In January 2015, he purchased a single-family home in Thousand Oaks, California (the "Property") to rehabilitate and resell. The MLS listing for the Property stated that the "Property is most likely a tear down or slab foundation will need to be replaced due to settlement issues. . . . Good property for rehab investor." Debtor testified at trial that he never saw the MLS listing.

Debtor was represented in the transaction by Aaron Berger, a California licensed real estate broker. After inspecting the Property, Mr. Berger signed an Agent Visual Inspection Form ("AVID"), stating that there was "cracking," "pronounced cracking," or "major cracking" on the walls and ceiling of the entry, the living room, the dining room, the kitchen, and all three bedrooms. The AVID form further stated that there was "noticeable cracking on many sections of walls and ceiling throughout home; foundation issues discovered by specialist." Mr. Berger also signed a Real Estate Transfer Disclosure Statement ("TDS"), which stated that there were "cracks in ceiling + walls. Possible foundation cracks." According to Mr. Berger's trial testimony, although he did not specifically remember

2

providing the AVID or the TDS to Debtor, his practice was to do so. However, the copies of those documents introduced into evidence at trial were not initialed or signed by Debtor.

After making improvements to the Property, Debtor listed it for sale. Appellees Russell and Cheryl Prior attended an open house. They asked the realtor whether there were any major defects with the Property and were told that the roof had undergone major repairs but that the realtor was unaware of any other defects. The Priors executed a purchase and sale agreement with Debtor for $590,000. They were provided with a Seller Property Questionnaire ("SPQ") and a TDS, both of which were signed by Debtor.

In the SPQ, Debtor disclosed that he had painted the house and replaced the floors, interior and exterior doors, kitchen cabinets and countertops, and the garage door. He also disclosed that proper drainage had been installed in the back yard to remediate a previous drainage problem. Debtor represented that he was not aware of "[a]ny past or present known material facts or other significant items affecting the value or desirability of the Property not otherwise disclosed to Buyer." In the TDS, Debtor also indicated he was not aware of any significant defects or malfunctions with the Property, including the foundation and slab, nor was he aware of "[a]ny settling from any cause, or slippage, sliding or other soil problems." The Priors hired a property inspector to inspect the Property, who told them that the Property did not have any foundation issues.

The sale closed in April 2016. In late 2016, after rainy weather, the Priors noticed cracking on the interior walls in the bedroom, kitchen, living room, and exterior. One of the interior doors in the house started scraping the floor. Portions of the bathroom tiling started to loosen, and there were drainage issues in both bathrooms. In the kitchen, the marble countertop started to separate from the wall, and cabinets started to separate from the ceiling. The cracking worsened throughout the rainy season.

The Priors obtained estimates totaling approximately $175,000 to repair the foundation issues and perform cosmetic repairs. The Priors did not have the foundation work performed, but they sued Debtor and others, including the property inspector, in state court. All defendants settled except Debtor, and a default judgment was entered against him in 2019.

In June 2020, the Priors listed the Property for $688,000. They disclosed the settlement issue with the Property and described the cracking and other issues that had arisen after they purchased it. The disclosure advised prospective buyers to "perform any and all inspections to satisfy themselves." The Property sold for $675,000.

## B. Bankruptcy Events

In the meantime, on February 13, 2020, Debtor and his wife filed a joint chapter 7 petition. The Priors filed a complaint against Debtor only, seeking to have the state court default judgment declared nondischargeable under § 523(a)(2)(A). They moved for summary judgment, arguing that the default judgment was entitled to issue preclusive effect. The bankruptcy

court denied the motion because Debtor obtained relief from that judgment in the state court.

The matter was then set for trial. The trial-setting order provided that all direct testimony would be by declarations to be filed by a date certain. Debtor did not file a declaration, but the bankruptcy court nevertheless permitted him to testify at the trial. In addition to the parties, the court heard testimony from Mr. Berger; Daniel Bone, the appraiser who conducted an historical appraisal; and Gigi Bronstrup, consumer relations manager for the contractor that had provided the estimate for the foundation repairs.

Debtor testified that he never saw the MLS listing, the AVID, or the TDS. He further testified that, although he did a walk-through, it was rushed and the house was full of junk, and he did not remember seeing any cracking except for possibly on the drywall by the living room. The bankruptcy court found this testimony not credible, noting that as an experienced real estate agent, Debtor would have read the mandatory disclosures provided in connection with his purchase of the Property. Additionally, he would have seen the extensive cracking that was visible throughout the home and would have been aware that the cracking would have a "significant and measurable effect on its value or desirability." The bankruptcy court also found that Debtor's failure to submit a declaration before trial undermined his credibility, inferring that his failure to file a

declaration was intended to "compromise Plaintiffs' ability to respond to Defendant's testimony and to his previously unidentified exhibit."

Based in part on its credibility finding, the bankruptcy court concluded that a declaration of nondischargeability under § 523(a)(2)(A) was warranted. And, as discussed below, the bankruptcy court found that the Priors' damages totaled $135,000. The court thus granted judgment for the Priors. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in finding the debt nondischargeable under § 523(a)(2)(A)?

Did the bankruptcy court err in finding that the proper amount of damages was $135,000?

## STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996). Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error. *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996). The bankruptcy court's factual findings regarding the amount of damages are also

6

reviewed under a clearly erroneous standard. *Lundell v. Ulrich (In re Ulrich)*, 236 B.R. 720, 723 (9th Cir. BAP 1999).

Under the clearly erroneous standard of review, if the bankruptcy court's findings are plausible in light of the record viewed in its entirety, we may not reverse even if we would have weighed the evidence differently. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (citations omitted). We will affirm the bankruptcy court's factual findings unless they are illogical, implausible, or without support in inferences that may be drawn from the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

We are to give "due regard to the trial court's opportunity to judge the witnesses' credibility." Civil Rule 52(a)(6) (incorporated via Rule 7052). We also give deference to inferences drawn by the trial court. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir. 1995).

## DISCUSSION

### A. The bankruptcy court did not err in finding the debt nondischargeable under § 523(a)(2)(A).

A creditor asserting nondischargeability of a debt under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence:

(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

Failure to disclose a material fact constitutes a false representation if the debtor was under a duty to disclose and intended to defraud the creditor. *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996).

At oral argument before this Panel, Debtor's counsel conceded that there was a misrepresentation, acknowledging that the bankruptcy court's credibility finding could not be reversed on appeal. He contended, however, that the reliance element was not met because the Priors hired their own inspector and thus did not rely on Debtor's failures to disclose. But, as a matter of Ninth Circuit law, if a creditor establishes the nondisclosure of a material fact that the debtor was under a duty to disclose, the reliance and causation elements are established and need not be separately proven. *In re Apte*, 96 F.3d at 1323. Moreover, under California law, the failure of the Priors' inspector to identify any foundation issues was not an intervening cause that relieved Debtor from liability.

> The intervening negligence (or even recklessness) of a third party will not be considered a superseding cause if it is a normal response to a situation created by the defendant's conduct and is therefore within the scope of the reasons for imposing the duty upon the defendant to refrain from negligent conduct in the first place. A cause is superseding only when the third party's intervening negligence is highly unusual or extraordinary and far beyond the risk the original tortfeasor should have foreseen.

*Pedeferri v. Seidner Enters.*, 216 Cal. App. 4th 359, 373 (2013), *as modified on denial of reh'g* (June 12, 2013) (cleaned up). Had Debtor disclosed the cracking issues, the Priors' inspector could have looked for the source of the problem, i.e., by focusing his inspection on soil stability and settlement issues.

In short, the bankruptcy court did not err in finding that all the elements of § 523(a)(2)(A) were met.

## B.     The bankruptcy court did not err in awarding $135,000 in damages.

The bankruptcy court found that the appropriate measure of damages was the difference between what the Priors paid for the Property and what it would have been worth had all the cracking issues been disclosed. This is correct. California Civil Code § 3343(a) provides: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction . . . ." If damages are proven, "a trial court is permitted a

reasonable approximation in determining the amount." *Hartong v. Partake, Inc.*, 266 Cal. App. 2d 942, 969 (1968) (citation omitted).

In determining damages, the bankruptcy court used the historical appraisal performed by Mr. Bone, which estimated the value of the Property at $455,000 as of April 14, 2016, the date the Priors purchased it. No evidence was presented to the contrary. The Priors paid $590,000, so the bankruptcy court fixed the amount of damages at the difference between $590,000 and $455,000, or $135,000.

On appeal, Debtor attacks Mr. Bone's methodology in performing the historical valuation. His theory is that more damage occurred after the Priors purchased the Property so that the repair estimate was not an accurate basis for computing the historical value. Debtor also contends that damages should be limited to the $13,000 reduction from the Priors' asking price when they sold the Property. Alternatively, he argues that damages should be capped at $35,000 because similar properties without defects sold for an "average" of $710,000 when the Priors sold the Property (apparently based on one line item in Mr. Bone's analysis showing median home prices between April and July 2020).

Debtor's arguments are simply an attempt to muddy the waters. The bankruptcy court applied the proper measure of damages under California law, and Debtor presented no evidence at trial to contradict Mr. Bone's valuation or to show that his methodology was flawed. Because valuation is a factual question, we may reverse only if we conclude that the

bankruptcy court's finding was illogical, implausible, or without support in the record. That is not the situation here. The court's conclusion is fully supported by the record, and the bankruptcy court was under no obligation to consider, let alone accept, an alternate factual basis for calculating damages that was based entirely upon conjecture.

## CONCLUSION

For these reasons, the bankruptcy court did not err in finding the debt resulting from Debtor's nondisclosure of the cracking issues was nondischargeable. Nor did the bankruptcy court err in determining the amount of damages. We therefore AFFIRM.